## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOSE APONTE,

       *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

       *Defendant*.

_____/

CASE NO. 15-13691

DISTRICT JUDGE ROBERT H. CLELAND
MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT
### (Docs. 13, 14)

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. 13) be **DENIED** and that the Commissioner's Motion for Summary Judgment (Doc. 14) be **GRANTED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act 42 U.S.C. §§ 401-34 and Supplemental Security Income ("SSI"). (Doc. 6.) The matter is currently before the Court on cross-motions for summary judgment. (Docs. 13, 14.)

On September 28, 2012, Plaintiff filed the present claim for SSI and DIB, alleging that he became disabled on August 2, 2012. (Tr. 157, 160.) Plaintiff formerly worked as a travel coordinator for the Veterans Administration Medical Center since 1997. (Tr. 185.) Plaintiff's initial claim was denied, (Tr. 75, 76,) and Plaintiff requested a hearing. (Tr. 110-11.) On February 10, 2014, Plaintiff appeared before Administrative Law Judge ("ALJ") David F. Neumann, who considered the application for benefits *de novo*. (Tr. 31-74.) The ALJ found that Plaintiff was not disabled on April 1, 2014. (Tr. 11-30.) The ALJ's decision became the Commissioner's final decision on, August 20, 2015, when the Appeals Council denied Plaintiff's request for review. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). (Tr. at 1-5.)

On October 19, 2015, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Pl. Compl., Doc. 1.) Plaintiff filed a motion for summary judgment and supporting brief (Doc. 13.) and Defendant filed a response and cross motion for summary judgment. (Doc. 14.) Accordingly, pursuant to E.D. Mich. LR 7.1(f)(1), these motions are ready for report and recommendation without oral argument.

**B.    Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health and Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Id.* (internal citations omitted).

### C.      Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

3

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

## D.    ALJ Findings

Following the five step analysis, the ALJ found that Plaintiff was not disabled under the Act. At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2017, and had not engaged in substantial gainful activity since the alleged onset

4

date, August 2, 2012. (Tr. 16.) At step two, the ALJ found Plaintiff had the following severe impairments: "adjustment disorder with depressed mood; obesity; and spondylosis of the lumbosacral spine." (Tr. at 17.) At step three, the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listings in the regulations. (Tr. 17-18.) The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work

> except is limited to occasional contact with coworkers, supervisors, and the public; requires a sit/stand option at the work station, meaning he could sit or stand at will while performing his assigned duties; could stand or walk for a total of 2 hours in an 8-hour workday and sit for a total of 6 hours in an 8-hour workday; is limited to only occasional pushing and pulling with the right lower extremity up to 15 pounds; and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.

(Tr. 19.) At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 24.) At step five, the ALJ found that a significant number of jobs existed which Plaintiff could perform despite his limitations. (Tr. 24-25.) The ALJ also found that Plaintiff was forty-seven on the alleged disability onset date and therefore a younger individual (ages 18-49). (Tr. 24.) As a result, the ALJ found Plaintiff is not disabled under the Act. (Tr. 24-25.)

### E.   Administrative Record

On November 8, 2011, the Veteran's Administration (VA) hospital records noted a rated disability of "limited motion in lumbar spine (20%)". (Tr. 276.) An MRI of the lumbar spine taken on May 12, 2011 showed "[m]ild eccentric bulging of the disc at L1/L2 extending from the left paracentral line into the left lateral recess without impinging the nerve root sleeve[,]" "[m]ild eccentric protrusion of the disc at L1/L2 into the right lateral recess impinging the ipsilateral nerve root sleeve" and "[h]ypertrophic facet joints at L4/L5 constricting the exit neural foramina." (Tr. 223.) On that same day, it was noted that Plaintiff

5

reported he could not sit for longer than ½ hour at a time. (Tr. 270.) An MRI of the low extremity taken on December 5, 2011 was normal with "[n]o significant joint effusion" and "[n]o bone contusion[.]" (Tr. 225, 279-80, 328.) An MRI of the lumbar spine was also taken on December 5, 2011 and it revealed "[m]ild eccentric bulging of the disc at L1/L2 extending from the left paracentral line to the left lateral recess without impinging the nerve root sleeve[,]" "[m]ild eccentric profusion of the disc at L1/L2 into the right lateral recess impinging the ipsilateral nerve root sleeve" and "hypertrophic joints at L4/L5 constricting the exit neural foramina." (Tr. 285, 330.)

Plaintiff was treated by Dr. Ghazwan Atto. On January 9, 2012, Plaintiff reported worsening lower back pain but also reported that "[s]ymptoms are relieved by pain meds/drugs." (Tr. 296.) Upon examination, all of Plaintiff's systems were normal, including "[n]ormal range of motion, muscle strength, and stability in all extremities with no pain on inspection" and he was found to be "oriented to time, place, person, and situation" exhibiting "normal insight" and "normal judgment" as well as "appropriate mood and affect." (Tr. 298.) On January 24, 2012, Plaintiff had sought treatment for a vomiting problem, but the same normal findings were made as to his musculoskeletal and psychiatric systems. (Tr. at 301.)

As of March 6, 2012, Plaintiff was "ready for consult to neurology regarding back pain with radiation right leg." (Tr. 233, 289.) Plaintiff reported that "pain 6 would be worse if he didn't have knee brace and need consult for back brace." (*Id*.)

On March 13, 2012, Plaintiff reported pain at level 9 out of 10 to Dr. Atto and he "denie[d] relieving factors." (Tr. 302.) Dr. Atto again found all of Plaintiff's musculoskeletal and psychiatric systems, as well as his other systems, were normal. (Tr. 304.) On April 27,

6

May 14, and August 2, 2012, similar normal results were obtained. (Tr. 307-08, 310-11, 313-14.) On May 29, 2012, Plaintiff underwent lumbar epidural steroid injections at the L4 to L5 levels. (Tr. 530.)

On August 4, 2012, an MRI of the lumbosacral spine was performed and showed "mild multilevel degenerative changes[.]" (Tr. 327.)

On September 10, 2012, Plaintiff reported pain in upper, middle, and lower back, that he "needs to change position every 5-10 min[.]" (Tr. 391.) In addition, it was noted that Plaintiff had been referred to neurosurgery and that the recommendation was for rehabilitative exercise and "possible epidural injections." (*Id.*) The same normal musculoskeletal and psychiatric findings were made. (Tr. 320-21.)

On October 17, 2012, Plaintiff reported pain at level 8, that the "problem is stable" and that "[s]ymptoms are relieved by pain meds/drugs." (Tr. 323, 331.)   On November 19, 2012, Plaintiff reported pain throughout his back but also stated that "[s]ymptoms are relieved by ice and pain meds/drugs." (Tr. 334.) On December 20, 2012, Plaintiff reported all over back pain and that his "[s]ymptoms are aggravated by daily activities." (Tr. 338.) All systems examined were again normal. (Tr. 340.)

On January7, 2013, Plaintiff reported middle and lower back pain, that the problem was stable, and he "denie[d]" aggravating and relieving factors. (Tr. 341.) Again all systems examined were normal. (Tr. 342-43.)

On January 18, 2013, Plaintiff was examined by John Jeter, MA, LLP, LMSW, and Hugh Bray, PhD supervised the report. (Tr. 350.) Mr. Jeter indicated that depression was first diagnosed in 2011 at the VA Center in Detroit. (Tr. 346.) Plaintiff reported that the

7

effectiveness of his medications is "'fair.'" (Tr. 347.) Mr. Jeter also noted that the quality and frequency of his reported daily activities were both fair. (*Id*.) Mr. Jeter noted that Plaintiff "responds to instructions well[,]" "requires no special assistance to complete the examination[,]" "is cooperative, motivated, and verbally responsive[,]" "[h]is thoughts are logical, organized, simple and concrete[,]" "[c]ontent of communication is age appropriate" and that his "mood is mild/moderately depressed." (Tr. 348.) Mr. Jeter also found Plaintiff's "contact with reality is good[,]" and that his "thought content is appropriate with no apparent thought disorder." (Tr. 348-49.) Mr. Jeter concluded that he "does present with Mild to Moderate Depression." (Tr. 349.) Mr. Jeter also concluded that there is "no difficulty in the patient's ability to comprehend and carry out simple non-physical directions or perform simple, non-physical, routine, repetitive simple tasks" and that there is "no difficulty in the patient's ability to comprehend complex tasks" but that there is "moderate difficulty in the patient's ability to create and maintain good working relationships" and "the patient's ability to get along appropriately with the public" and "mild difficulty in the patient's ability to get along appropriately with supervisors." (Tr. 350.) Mr. Jeter assessed a GAF score of 54. (*Id*.)

On February 11, 2013, Dr. Atto noted that Plaintiff's "problem is stable" and that he "denies relieving factors." (Tr. 353.) For the first time, "lower extremity weakness, 4 out of 5" was noted upon examination but all other systems were normal. (Tr. 355.)

On April 4, 2013, Dr. Atto noted that Plaintiff's musculoskeletal examination was "positive" for "back pain[,] muscle weakness[, and] myalgia." (Tr. 358.)  Dr. Atto also noted "hyperflexia." (Tr. 359.) On that same day, Dr. Atto completed a "Medical Statement for Social Security disability claim" form. (Tr. 351-53.) Dr. Atto concluded that Plaintiff's pain

8

was "severe" and that he could stand and sit for "30 minutes" at a time, but could only work for "2 hours" per day. (Tr. 351.) In the comments section, Dr. Atto wrote "extreme back and rt leg pain that limit his mobility" and that Plaintiff "has some relief [?] with pain medication that could affect his cognition." (Tr. 352.)

On May 17, 2013, Plaintiff reported pain at level 8 out of 10 and "denie[d] relieving factors." (Tr. 361.) Plaintiff also reported insomnia and depression. (*Id.*) On August 9, 2013, Plaintiff's psychiatric examination was all normal and his extremities were normal. (Tr. 367.) On November 11, 2013, Plaintiff was seen for stable hypertension and hyperlipidemia which was noted as "mild" and stable. (Tr. 369.)  Plaintiff reported pain at 5 out of 10. (Tr. 370.) Plaintiff's musculoskeletal (including "range of motion, muscle strength and stability in all extremities with no pain on inspection" and psychiatric examinations were all normal. (Tr. 371.)

On October 15, 2013, at the VA Hospital, Plaintiff reported pain in his lumbar spine that radiates down the back into his right leg to the foot that is aggravated by "prolonged walking, bending or twisting" but which does not cause any weakness or numbness. (Tr. 390.) Plaintiff reported that prescription medication "dulls the pain but does not provide enough relief." (*Id.*) Upon examination, Plaintiff's "[s]trength is normal as is sensation. It is not clear what the source of the pain is." (Tr. 391, 470.) It was recommended that Plaintiff's medication be increased. (*Id.*)

On February 19, 2014, Dr. Atto wrote a letter to whom it may concern that Plaintiff's "symptoms are conistant [sic] with radiculopathy without significant findings on exam." (Tr. 532.)

At the administrative hearing on February 10, 2014, Plaintiff testified that he lives with his mother and aunt, and that he is 5"4' and that he has weighed around 198 pounds since 2012. (Tr. 35-36.) Plaintiff received approximately one year of education after high school when he learned how to work in tool and die casting. (Tr. 36.) Plaintiff was wearing a knee brace on his right leg which he indicated was prescribed for him in 2012. (Tr. at 36-37.) Plaintiff also confirmed that he has not spent any time in jail or prison since August of 2012. (Tr. 37.) Plaintiff experiences pain from his "[m]id-lower back all the way to the lower back…all the way to my right leg to the bottom of - - or to my foot area." (*Id*.) Plaintiff also reported difficulty concentrating "[r]ightly around 2012, in that area" but later clarified that it started in 2010 when he was working at the VA. (Tr. 37-39.) Plaintiff brought new evidence to the hearing showing that he had been given some epidural shots for pain. (Tr. 40.) When asked how the shots worked for him, Plaintiff responded, "it didn't alleviate the pain." (Tr. 40-41.) Plaintiff was interested in further treatment, such as acupuncture, but indicated that he could not afford it. (Tr. 41-42.) Plaintiff also testified that physical therapy "didn't give me alleviation of the pain or  - - anything." (Tr. 43.) Plaintiff is taking Vicodin, Gabapentin, and Valium for pain and has experienced dry mouth and sleepiness from the medications. (Tr. at 44.) Plaintiff shops "once or twice a week" and "probably could cook" but his sixty-nine year old mother cooks for him. (Tr. 45-46.) Plaintiff does laundry in a separate building "every two to three weeks" and could put dishes in the dishwasher but could not wash them by hand since that requires standing for too long. (Tr. 46-47.) Plaintiff "could probably do vacuuming" but his "aunt and mother do it the old-fashioned way with a broom." (Tr. 47.) Plaintiff does the mopping of hard floors, goes to church once a week, drives a car for twenty minutes to get to

10

church, takes the trash out "probably once a day[,]" and spends time on-line for "30-34 minutes or so" at a time. (Tr. 47-49.) Plaintiff is "kind of inclined" when he uses the computer. (Tr. 49.) Plaintiff also enjoys reading mystery novels for "an hour or so" at a time and watches movies for "[a]bout an hour" at a time. (Tr. 49-50.) Plaintiff testified that since 2012, he has been able to sit for "30 to 45 minutes" at a time, stand "about the same" and walk "between 15-20 minutes or so." (Tr. 50-51.) Plaintiff stated that he can lift, carry, push or pull "about 15-20 pounds." (Tr. 51.) Plaintiff lies down three times a day for 45 minutes to one hour with his legs elevated but he does not sleep. (Tr. at 52-53.) Plaintiff estimated that he has "[r]oughly about 18" good days per month and the rest are "between bad and not that good." (Tr. 55.) Plaintiff agreed that any depression he was experiencing was secondary to his physical limitations. (Tr. 57.) Plaintiff testified that he was short with and got upset with people he was charged with helping at the VA before he stopped working. (Tr. 60-61.)

The ALJ asked Plaintiff's counsel how he could "reconcile [Dr. Atto's] RFC in 5F with his treatment notes in Exhibit 2F where, when he looked at the claimant in January of 2012, he reports normal range of motion, strength, and stability with no pain. And then, in 3F, in January of 2013, he again reports normal range of motion, muscle strength, stability in all extremities; no pain on inspection; subtle weakness of the right lower extremity." (Tr. 61.) In November 2013, "[h]e again reports normal range of motion, muscle strength and stability in all extremities with no pain on inspection. How do you reconcile the very limiting RFC that he has, where he's saying that the claimant can lift zero pounds? And the claimant said today he can lift 15 to 20 [?]" (Tr. at 61-62.) Plaintiff's counsel responded, "Your honor, I don't – I don't know that I can reconcile that....I can't really speak for the doctor as to why he - -  why

11

there's the discrepancy between his medical records - - between his treating records and the RFC." (Tr. 62.) Counsel requested some time to ask Dr. Atto to explain and the ALJ gave him 14 days. (Tr. 63.) Dr. Atto wrote a note dated February 19, 2014, wherein he stated, in total, "Mr. Aponte has had chronic back with radiculopathy. His symptoms are consistent with radiculopathy without significant clinical findings on exam. If you have any questions, please feel free to contact my office." (Tr. 532.)

The ALJ asked the vocational expert (VE) to consider a person with Plaintiff's background who "could tolerate occasional contact with supervisors, coworkers, and the public; who could lift or carry 10 pounds frequently and 20 pounds occasionally; would require a sit-stand option…meaning that they could sit-stand at will while performing their assigned duties; that they could stand or walk with normal breaks for a total of two hours in an eight-hour workday and sit with normal breaks for a total of six hours in an eight-hour workday. They could perform pushing-pulling motions with their upper and lower extremities within those weight restrictions, but only occasional pushing and pulling with the right upper - - with the right lower extremity up to 15 pounds; and that person could perform each of the following postural activities: occasionally climbing ramps and stairs; balancing, stooping, kneeling, crouching, and crawling." (Tr. 67-68.) The VE responded that such a person could not perform any of Plaintiff's past relevant work but could perform: record clerk jobs (1,300 lower peninsula of Michigan, 57,000 nationally)(sedentary); unskilled office clerk jobs (18,000 in the lower peninsula of Michigan, 590,000 nationally)(light); customer service rep (14,000 lower peninsula, 560,000 nationally)(light). The ALJ then asked the VE to assume the same facts with the additional requirement that the person would be off task three times a day for 45

minutes or 20% of the day. (Tr. 69.) The VE responded that no jobs would be available to such a person. (Tr. 70.) Adding a limitation to the first hypothetical of no contact with the public, the job of record clerk would be reduced to 750 in the region and 35,000 nationally and general office clerk would be reduced to 9,000 jobs regionally and 260,000 nationally. (Tr. 72.)

**F.     Governing Law**

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, but the only relevant distinction for present purposes is between "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2. Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her residual functional capacity. *Id.* at 404.1527(d).

13

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse*, 502 F.3d at 540-42; SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's residual functional capacity ("RFC"), and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2). *See also*

*Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec. of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner*, 375 F.3d at 390.

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence

15

verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

(i)    [D]aily activities;

(ii)   The location, duration, frequency, and intensity of . . . pain;

(iii)  Precipitating and aggravating factors;

(iv)   The type, dosage, effectiveness, and side effects of any medication .
       . . taken to alleviate . . . pain or other symptoms;

(v)    Treatment, other than medication, . . . received for relief of . . . pain;

(vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of her

16

subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to step five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G.    Analysis

Plaintiff contends that the residual functional capacity (RFC) determination by the ALJ did not accurately portray Plaintiff's physical and mental impairments and substantial treatment (Doc. 13 at 15,) and that the ALJ failed to properly evaluate Listing 1.04. (Doc. 13 at 15-6.)

Although it is Plaintiff's burden of proof at step three, the ALJ must provide sufficient aticulation of his findings to permit meaningful review. *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 416 (6th Cir. 2011); *Woodall v. Colvin*, No. 5:12cv1818, 2013 WL 4710516, at *10 (N.D. Ohio Aug. 29, 2013) ("[T]he ALJ must build an accurate and logical bridge between the evidence and his conclusion.").

The ALJ expressly considered Listing 1.04 in his opinion, concluding:

The claimant's spondylosis does not meet or medically equal listing 1.04 because the claimant lacks the requisite motor and sensory deficits, and there is no evidence of spinal arachnoiditis or spinal stenosis resulting in pseudocluadication.

(Tr. 17.) The ALJ also considered Listing 1.00(Q)(obesity) and 12.04(mental impairments) in some depth. (Tr. 17-18.) Thus the ALJ adequately considered the relevant Listings and explained his findings.

Plaintiff contends that Listing 1.04 could be met because of the "MRI results which demonstrate bulging at L1-2; disc protrusion at L1-2 into the right lateral recess impinging on the nerve root sleeve; and hypertrophic facet joints at L4-5 constricting the exit neural foramina." (Doc. 13 at 15.) The elements of Listing 1.04 are:

Disorders of the spine [] resulting in compromise of a nerve root [] or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

18

20 C.F.R. pt. 404, Subpt. P. App. 1, Listing 1.04. The MRI results cited by Plaintiff do not mention any of the requirements for Listing 1.04. Accordingly, the ALJ did not err in finding Plaintiff failed to meet or equal Listing 1.04.

Plaintiff asserts that substantial evidence does not support the ALJ's RFC determination because it does not "accurately portray" Plaintiff's "physical impairments and substantial treatment." (Doc. 13 at 10.) Plaintiff lists a series of errors alleging that they demonstrate that the ALJ's decision was not supported by substantial evidence: "the ALJ physical limitations are unquestionably inconsistent with light work[,]" the ALJ "never accurately states what limitations [plaintiff[1]] suffers from his severe impairments;" "never rejects Plaintiff's severe complaints of pain but [does not] evaluate it properly either;" "does not include any non-exertional limitations;" and "outright misstates and minimizes Plaintiff's impairments throughout the decision without explanation." (Doc. 13 at 11-12.) Plaintiff repeatedly criticizes the decision stating for instance that "[t]he decision is so lacking in its detail and analysis that it is impossible to understand." (Doc. 13 at 12.)

Addressing nearly identical arguments from Plaintiff's counsel in *Gower v. Commissioner of Social Security*, the undersigned magistrate found that "Plaintiff's analysis . . . suffers all the evils it finds in the ALJ's." No. 13-14511, 2015 WL 163830, at *23 (E.D. Mich. 2015) (adopting report and recommendation). As pointed out in *Gower*:

> Plaintiff's argument makes little effort to show why she is disabled, and instead, in the most general terms, points out the things the ALJ did not do. Plaintiff would have done well to answer the questions her brief naturally provokes: what evidence supports her claim; how would a proper credibility analysis lead the ALJ

---

[1] The brief refers to the Plaintiff as "Mr. Davis" rather than Mr. Aponte. The Court assumes this is because the brief is nearly identical to a brief filed in the Scott Davis case, E.D. Mich. 15-13028.

> to find disability; what exactly did the ALJ "mistate[] and minimalize[]"; and how does the ALJ's RFC not state "what limitations Ms. Gower suffers from her severe limitations." By not providing any substantive analysis, the argument flirts with waiver. *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that . . . arguments adverted to in only a perfunctory manner, are waived.").

*Id.* Nonetheless the court will address each distinguishable argument raised here.

Plaintiff alleges that the ALJ did not state which limitations Plaintiff suffers as the result of his severe limitations. (Doc. 13 at 11.) This is inaccurate because that is exactly what an RFC does. *Gower*, 2015 WL 163830, at *23. In addition, contrary to Plaintiff's allegations the ALJ's RFC includes nonexertional limitations related to pain. The ALJ noted that Plaintiff should "have limited to occasional contact with coworkers, supervisors, and the public[.]" (Tr. 19.) These are considered non-exertional limitations. 20 C.F.R. §§ 404.1569a(c), 416.969a. Thus, I suggest that the ALJ did not err.

Plaintiff alleges that the ALJ made no attempt to analyze the factors set forth in Social Security Regulation 96-7p and never evaluated Plaintiff's subjective complaints. (Doc. 13, at 10-11.) This argument also fails. The ALJ thoroughly evaluated Plaintiff's subjective complaints and compared them with the medical findings. (Tr. at 19-24.)

Specifically, the ALJ noted that Plaintiff had suffered from back pain for "over 20 years, which he acquired from jumping out of planes in the military" yet MRIs and other tests did not show any disabling conditions. (*Id.*) MRIs showed, at most, "mild" conditions. (Tr. 223, 285, 327, 330.) Dr. Atto's examinations consistently revealed normal results, including "[n]ormal range of motion, muscle strength, and stability in all extremities with no pain on inspection" and he was found to be "oriented to time, place, person, and situation" exhibiting

"normal insight" and "normal judgment" as well as "appropriate mood and affect." (Tr. 298, 301, 304, 307-08, 310-11, 313-14, 320-21, 340, 342-43.)  The only exception to these normal findings occurred on the day that Dr. Atto also prepared a "Medical Statement for Social Security disability claim" form. (Tr. 351-53.) Dr. Atto concluded that Plaintiff's pain was "severe" and that he could stand and sit for "30 minutes" at a time, but could only work for "2 hours" per day. (Tr. 351.) In the comments section, Dr. Atto wrote "extreme back and rt leg pain that limit his mobility" and that Plaintiff "has some relief [?] with pain medication that could affect his cognition." (Tr. 352.) On that same day, Dr. Atto noted that Plaintiff's musculoskeletal examination was "positive" for "back pain[,] muscle weakness[, and] myalgia." (Tr. 358.)   Dr. Atto also noted "hyperflexia." (Tr. 359.) After that day, the examination results all returned to "normal." (Tr. 367, 371.)

As the ALJ noted, Plaintiff's treatment was modest, including only prescription medication and a few epidural steroid injections at the L4 to L5 levels. (Tr. 530.)

As to Plaintiff's depression, Mr. Jeter noted that Plaintiff "responds to instructions well[,]" "requires no special assistance to complete the examination[,]" "is cooperative, motivated, and verbally responsive[,]" "[h]is thoughts are logical, organized, simple and concrete[,]" "[c]ontent of communication is age appropriate" and that his "mood is mild/moderately depressed." (Tr. 348.) Mr. Jeter also found Plaintiff's "contact with reality is good[,]" and that his "thought content is appropriate with no apparent thought disorder" and diagnosed mild to moderate depression. (Tr. 348-49.) Mr. Jeter also concluded that there is "no difficulty in the patient's ability to comprehend and carry out simple non-physical directions or perform simple, non-physical, routine, repetitive simple tasks" and that there is "no difficulty

in the patient's ability to comprehend complex tasks" but that there is "moderate difficulty in the patient's ability to create and maintain good working relationships" and "the patient's ability to get along appropriately with the public" and "mild difficulty in the patient's ability to get along appropriately with supervisors." (Tr. 350.) The ALJ's RFC findings incorporated these mild limitations.

This careful parsing of the evidence belies Plaintiff's assertion that the ALJ ignored the credibility analysis. He reviewed evidence from the relevant period, and cited supporting medical opinions. Nothing in the record contradicts the analysis or casts doubt on the ALJ's conclusions. Thus I suggest that the ALJ's findings are supported by substantial evidence.

### H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Aponte's Motion for Summary Judgment (Doc. 13) be **DENIED**, the Commissioner's Motion (Doc. 14) be **GRANTED**, and that this case be **AFFIRMED**.

## III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1.) Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981.) The parties are advised that making some

objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987.) Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d.) The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  September 22, 2016                    S/ PATRICIA T. MORRIS
                                             Patricia T. Morris
                                             United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: September 22, 2016                     By s/Kristen Krawczyk
                                             Case Manager